The third case this morning is number 137124, DeBord v. McDonald, Mr. Anderson. Thank you, Your Honor. May I please report? My name is Brian Anderson. On behalf of the appellants in this case, I join DeBord, who was recently substituted for the veteran Will Vernon Daly. The issue today is whether Mr. Daly is entitled to notice regarding the negative determination as to his credibility by the board in the first instance, or alternatively, whether the board was at least required to discuss whether Mr. Daly was prejudiced without that notice. Can I ask you, Mr. Daly testified before the board in this case, right? That's correct. Are you suggesting that the board isn't the appropriate person to assess the The issue is we have no, and we fully recognize that it's inherent to both the RO and the board to assess the credibility, and the board does not have to determine credibility or prejudicate it before it makes a final decision. Our issue today is whether his credibility, he was notified at any point in time before the board, whether it was going to be adversely decided against him. The basis of our argument is basically to recognize... to testify to the board, and the board decides, you know, we don't think that's very credible based on the record evidence. The board has to issue a notice and say, we didn't find your testimony credible. Give it another shot. No, we don't think the board has to do anything. We think when the decision comes out to the, when the board wants to make a decision ultimately on the merits, all we're asking is for the board to engage in the inquiry on whether the veteran was maybe during that hearing, maybe at the regional office, maybe elsewhere. Well, let's assume for that hypothetical that they don't tell him anywhere where, when he shows up at the board that they're not obligated to believe him, and then they decide when they go back and adjudicate the claims that they don't in fact believe him. Then do you think they have to send out a notice saying, we don't believe you? No. Give it another shot. No, we do not believe that... But that sounds like what you're saying. We do not believe that there is any sort of notice, separate notice required. All we're asking, we don't, we're not even believing that the regional office or anyone below necessarily has to do anything. All we're asking is for the board to engage in the inquiry on whether there would have been notice, or whether there's, if there's even not notice, whether the veteran was prejudiced about not receiving that notice. So in the hypothetical, it's very well that the board could determine the veteran in this case, he was very aware that his credibility was at issue, we were questioning it, and he's had an opportunity to defend his credibility at various stages in this appeal. All we're asking for is for the board to engage in that sort of inquiry going forward. Doesn't that assume that there's an obligation to provide notice? Because if there wasn't, then why wouldn't there be an inquiry? Right. So we're attempting to extrapolate this fairness inquiry from essentially the underlying VA adjudicative scheme. Different statutes and regulations that really establish all the procedural requirements for the veteran and to protect his right to full and fair assistance. This includes the various duties to notify, but it's also inherent in this pro-veteran VA system. It's also the duties to, for example, provide the hearing, there's certain duties within the hearing by the hearing officers, there's also general duties to assist. Essentially, the entire scheme, including the issuance of the statements of the cases, was the regulations and the statute set up for that the statement of cases should be relevant to present written oral arguments, and then of course in the appeal from that statement of the case, that appeal should set up the specific allegations related to the specific items in the statement of the case. So what all these notices in particular are doing, they're telling the veteran the very precise basis of the decision and narrowing his response to those basis. So conversely, if he's not aware that his credibility is being questioned below, it's not being narrowed, he doesn't have the opportunity to obviously know that and respond to that. And by the time he reaches the board, he has lost his opportunity to defend his credibility, and given the nature of the veteran's court review over board decisions, it's very hard for him to do it, continuing to do it on appeal. We cited similar cases that extrapolate this fairness inquiry from these underlying adjudicative schemes. Two examples, one is similar to the Fair Process Doctrine. What would you have them do at each level? We would not require anything to be done at each level. We would like, it would be ideal if the regional office or some point away told the veteran that his credibility is being questioned or that in this case, they accused him of changing his story as he heard hearing loss of service. It would be nice if they would tell him that, but we're not even requiring that. Again, all we're requiring is for the board to engage in a simple fairness inquiry to tell him that whether he was notified for X, Y, Z reason, or even if he wasn't, whether there was prejudice. But you just said to me, we're not having them do anything at each level. That's how you began your answer. The regional, we're not requiring the regional, we're not... I said... No, go ahead. I said, what would you have them do at each level? The response was, we wouldn't have them do anything at each level. Our argument is not based on forcing the regional office on the levels below the board to necessarily do anything. I would like them... But you would have the board, if it's going to not believe somebody's story, issue a notice that we don't believe your story and you have an opportunity to respond, or say we don't believe the story and it doesn't matter what other testimony, the record's not going to change. All I would like the board to do is to consider, to consider whether there was notice below. That necessarily doesn't mean the board has to issue... Why would they have to consider it if there's no obligation to provide notice? Well, we do think the obligation to provide notice is there when a question is not addressed by the regional office below. So you do think there either has to be notice or finding a notice is unnecessary, and that if they don't do either of those things, it's reverse glare. If the board doesn't, right, if the board doesn't address, it doesn't engage in that inquiry, and if that's what the board finds, then yes, it should be, the notice should be run from the side. Remedy. So you are imposing an additional obligation on the board every time it doesn't believe somebody's story? Any time that it doesn't believe anybody's story, and then... Isn't that an inherent statutory function that people understand, that when there's a bunch of different evidence, the board makes a decision based on a weighing of that evidence? It is inherent before the board, and again, the question of deciding credibility just to a layperson is inherent, but we really have to focus on more just the ability to address it. Where I believe this really turns on is the... Well, what more would your client have done? He got up and he testified to the board, here's my version of the events. If the board had said, we don't believe you, what would he have said? My version of the events is true? I mean, he testified, presumably under oath, or even if he didn't, we assume he told the truth. I'm not sure what else he would add if the board said, we didn't believe you. Beyond him to say, well, you really should believe me, I'm telling the truth. Well, I mean, it would, in that hypothetical, it would come up on, you know, why, again, we're not requiring the board to adjudicate it then and there, but it would require, well, why don't you believe me? What you said, the point to, in this case, was a different story. Well, they press you in the opinion here why they didn't believe you. That his story was inconsistent with the actual factual record. And that he changed it. Right. And our argument is that the veteran never really had the opportunity to know that they're telling him that he's changed his story until the board said he did. But the veteran knew he changed his story. Yeah. It's sudden noise versus gradual increase. Well, he knew that after the board. Well, he's the one that told the two different stories. Well, maybe he didn't connect it up, but certainly he's the one telling the different stories. Well, I mean. That may at least impute the knowledge of what he's telling the RO and the board to him. Right. Our, I mean, our argument to that would be, as we go back into the facts, we still maintain that he did not change his story. And that he, because he was. Well, that's not something that's before us. Right. And that's why you have to accept the board's and the court's finding that he changed his story. Right. But our argument is that just, again, going back, he never had the opportunity to defend his credibility when he heard that for the first time by the board on remand as it pertained to his changing stories. We, similar cases from this scheme that deprived us notice or opportunity, one was the Fair Process Doctrine as the Veterans Court found in Thurber. In that case, the Veterans Court found that the board was authorized to rely on new medical treaties evidence. But because of the very underlying VA adjudicate scheme and regulations and statutes, there must be notice and opportunity provided at every step. And therefore, that was needed in their case. This court reiterated those essential principles in the recent Sprinkle case. And as cited in our briefs, the main case we relied on to demonstrate the application of these safeguards as demonstrating the reason for this fairness inquiry was found in Bernard v. Brown. In that case, the Veterans Court found that due to, again, due to those many procedural safeguards and listed essentially all the statutes and regulations that are very pro-veteran, very veteran-friendly in the VA system, again, notice and opportunity at every stage, there's a possibility, at least a possibility that prejudice was raised when one question that hasn't been decided below, adversely decided below, is decided in the first instance. And that's all we're essentially doing today is we're trying to extrapolate that unfairness inquiry and applying it to this case here. Without any further questions, I will reserve my time for rebuttal. Okay. Thank you, Mr. Daly. May it please the Court. Mr. Daly is challenging the Board's adverse determination on his credibility. However, this challenge is improper for two main reasons. First, it's outside the scope of this Court's review. Mr. Daly is disputing the application of Bernard and the right to one review under 7104A. How is that true? He's actually making a fairly discreet legal argument that extends the rule of Bernard to credibility determination, saying as a matter of law, if the Board makes an adverse credibility determination, the veteran has to be given a second hearing, or at least a notice of why a second hearing is insufficient. That seems to me to be quite clearly a legal issue within our jurisdiction. Because the Veterans Court specifically made a determination that Mr. Daly's credibility was an inherent part of that initial RO decision. But that's a legal issue, whether it is or not. I mean, if we disagree with that legal view, and that credibility determinations are subject to a second review under the statute, then we can say as a matter of law, they are, and it gets sent back, and the Board will have to either give him a second review or explain why the failure to do it was almost there. You know, it seems like you might have a better legal argument why that's not appropriate, but as a jurisdictional argument, that's... Certainly. Everything that comes in front of us... You know, there's an old axism that when you have a hammer, every problem is a nail. And for the government, every problem is a fat question over which we have no jurisdiction. It... judges... With regards to 7104A, it's a legal question. Why can't... you know, why do you always say you can't hear it? Why don't we just say we should win? Well, let's turn to the merits then. I mean, is there something in the checklist that you have to raise the jurisdiction on? And on the merits, the Board... Maybe the checklist should be revised. Perhaps. On the merits, the Board does have a general obligation to assess the credibility and the appropriate value of the evidence in the first instance. And here, this is what the Board did when it did question Mr. Daley's credibility. This is not a situation like Bernard or Disabled American Veterans in which new and material evidence is being presented for the first time and has not been dissolved by the RO below. This is the same record that was essentially before the RO was before the Board, and the Board complied with its obligation to assess Mr. Daley's credibility. I don't think it's the case here, but the fact that the Board allows live testimony from the veterans does raise, to me, an interesting question under that two-review thing, in that if the veteran comes in and raises in his or her affirmative testimony a new issue for the first time, what does the Board do? Can they go ahead and decide that and assess his or her credibility, or do they need to send it back down to the RO because it is a new issue? Certainly, there would be situations where new material evidence is presented that would require remand down to the RO. But in this situation, we have two accounts from Mr. Daley himself about what occurred regarding his hearing loss, and there is nothing new that he necessarily would be able to add to these two accounts. He could have a third one. But at this point, we have two inconsistent accounts in the record. Mr. Daley had an opportunity to testify to the Board regarding any additional information he may have had. And on appeal, nothing else has been pointed to that would explain away the inconsistency. If the Court has no further questions, we'll rest on our brief. Okay. Thank you, Ms. Boone. Thank you. Mr. Anderson? Thank you. I would just like to reiterate that we believe that there is jurisdiction here. We're attempting to interpret 7104A, whether credibility is a question. We're attempting to interpret whether the relevancy of safeguards requires such a fairness inquiry. And we're not just simply saying that Bernard should apply to this case. I believe the veterans' court below said that the legal reasoning and underlying premises of Bernard doesn't apply to this case. In terms of the merits, my problem is, in effect, it seems to me what you're saying is that the RO or anyone at a higher level should be saying you're getting warmer, you're getting colder. That is, we're thinking that you're not telling the truth. This is an adversary proceeding. I mean, admittedly, it's got a thumb on the scale, but nevertheless, the trier of fact gets two sides to the story. The trier of fact does get two sides, but I would disagree that it's not an adversary just proceeding. The entire purpose is to verify. I understand that. That's why I said there's a thumb on the scale. Right. But the whole system is designed that way. That is, the whole American legal system. Right. I realize there's an exception right there, but nevertheless, there is a trier of fact who hears evidence and makes a determination based on that fact, and to that extent, it's a traditional adversary proceeding. And to have the trier of fact saying, well, your evidence isn't good enough, it looks like you're lying, why don't you tell us something different, strikes me as incongruous. I would say, given the system, given the thumb on the scale, I would say it would not be. I would say he needs to know that he's trying to help him develop the facts to his case. But he didn't know his evidence had any effects, right, because he lost his RO. He had a claim for tinnitus, where the RO didn't grant it because they didn't believe it was service-connected, despite the fact that there was record testimony from him that it was. So, I mean, what more does he need to know than that his testimony has been protected? Well, I don't believe it was that narrow. So clearly, if they had accepted his testimony, that it was connected to his service, it would have been a grant. It may have been. There are many things that he needs to show, prove. He needs to obtain medical evidence. A lot of the medical evidence that they want is credibility to that. So I don't think it was that narrow, and it wasn't specific enough, or sufficient enough, to notify him that his credibility as to how his hearing loss... Well, but even if we agree with you that they didn't say, we find you incredible, they at least said, we don't find this service-connected, and it was clear that he had testified that it was service-connected. They did that. So they rejected that testimony, and he knew they rejected it. That is basically his general claim, though. Not necessarily as to be very honest about how he started hearing. This is where it seems like your position gets really problematic, in that it sounds like the logical result of it is whenever the RO or the board rejects a particular piece of evidence that's favorable to the veteran, they have to tell him or her why. I would not characterize... What do you have in the argument you're making? So I believe the interpretation resolves around what is the question. What is the question that matters? The question that matters is something that's necessary to the decision. So there could be a lot of things that he says that's favorable in his view, but if it's not necessary to the decision, it does not necessarily need to be addressed. So they have to address any critical piece of evidence and say, well, we don't believe you on that. That's our view. How do they know what's critical or not? I mean, they're going to come up and tell me that every piece of evidence that you said was critical, if he loses his claim, and that they made an error because they didn't address it. Well, regardless of what I say, that doesn't necessarily mean it's correct. Well, I understand, but it sounds like the burden you're trying to impose upon the board is incredible, that every time you get evidence that may support a veteran, if the board or the RO doesn't accept it, they have to specifically explain on each piece of evidence why they're not accepting it and give him an opportunity to re-argue it. I believe it's just only issues that are necessary to the decision, and that's supported by Section 511A as well as the OGC opinions, which really broaden the scope of what a question is and narrow it and consider it to be arguments, sub-arguments, and in laws and statutes and regulations, of course, it's a question of law, too. Okay, Mr. James, I think we're out of time. Thank you. Thank you. I'll cancel the case and submit it.